Argued and submitted April 19, ballot title certified May 3, reconsideration denied May 11, 1994

Paul R. FARAGO,
*Petitioner,*

*v.*

Theodore R. KULONGOSKI,
Attorney General,
State of Oregon,
*Respondent,*

*and*

Rece BLY,
Chief Proponent,
Norma Paulus,
an elector residing in Marion County,
John E. Bierwirth,
Superintendent, Portland School District 1J,
Yvonne Katz,
Superintendent, Beaverton School District 48J,
Russ Joki,
Superintendent, Tigard-Tualatin School District 23J,
Bill Hill,
Superintendent, Sherwood School District 88J,
Irv Nikolai,
Superintendent, Forest Grove School District 15,
Gene Carlson,
Superintendent, Rainier School District 13,
Art Anderson,
Superintendent, Alsea School District 7,
and Scott Mutchie,
Superintendent, Bend School District 1,
*Intervenors.*

(SC S41198)

872 P2d 961

James S. Coon, of Royce, Swanson, Thomas & Coon, Portland, argued the cause and filed the petition for petitioner. With him on the petition was Greg Wasson, Salem.

Richard Wasserman, Assistant Attorney General, Salem, argued the cause and filed the response for respondent. With him on the response were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

William H. Walters, of Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause for intervenors.

Lynn-Marie Crider, Portland, filed a memorandum for *amici curiae* Ellen Lowe, Jerry Bieberly, Charles Vars, Robert R. Cantine, Alice Dale, and Irv Fletcher.

Paul B. Gamson, of Bennett & Hartman, Portland, filed a memorandum for *amici curiae* Oregon Education Association/Oregon Association of Classified Employees and Robert Crumpton.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Durham, Justices.

PER CURIAM

Fadeley, J., dissented and filed an opinion in which Van Hoomissen, J., joined.

## PER CURIAM

In this original proceeding, petitioner challenges the ballot title for a proposed initiative measure. Petitioner is an elector who timely submitted written comments addressed to the Attorney General's draft ballot title. Therefore, he is entitled to petition this court seeking a different title. ORS 250.085(2).

The Attorney General certified this ballot title to the Secretary of State:

"AMENDS CONSTITUTION:
STATE MUST MAINTAIN FUNDING
FOR SCHOOLS, COMMUNITY COLLEGES

"QUESTION:   Shall constitution set minimum state funding of schools, community colleges based on funds available from listed sources in 1993-95 biennium?

"SUMMARY:   Amends state constitution. Requires Legislature to fund schools and community colleges at no less than 1993-95 base amount, as adjusted. Base amount is the funds needed to give schools and community colleges same funding they had in 1993-95 from listed sources. Base amount must be adjusted for inflation, deflation and enrollment changes. Legislature must compute base amount and adjustments before each biennium. Legislature may change the amount for any school or community college so long as it gives at least total funds required by measure."

■■   Petitioner asserts that the Caption, Question, and Summary in the Attorney General's ballot title are deficient in various particulars. We have considered his arguments but conclude that the ballot title certified by the Attorney General complies substantially with the requirements of ORS 250.035(1), ORS 250.085(5), and therefore certify that ballot title.[1]

---

[1] As already noted, petitioner had submitted comments during the statutory comment period and therefore had standing to seek review of the present ballot title. ORS 250.085(2). Intervenors have moved to "dismiss" the petition to review the ballot title under ORS 250.085(6), because petitioner's arguments to this court were not submitted in written comments to the Secretary of State, pursuant to ORS 250.067(1). That motion is denied. As a general matter, the fact that a petitioner may not be entitled to have certain of his arguments considered does not make the underlying petition dismissable under ORS 250.085(6). Instead, counsel should argue, in the terms of that statute, as did respondent here, that this court should

Ballot title certified. This decision shall become effective in accordance with ORAP 11.30(9).

**FADELEY, J.,** dissenting.

ORS 250.035 requires that a certified ballot title contain:

(1)    a Caption stating the *subject* of the measure;

(2)    a Question stating the *chief purpose* of the measure; and,

(3)    a Summary of the measure's *major effects*.[1]

The measure whose ballot title we scrutinize in this case adds 10 sentences to Article IX of the state constitution, relating to government finance obligations. The measure provides:

> "The Legislative Assembly shall appropriate * * * each biennium at least the amount specified by this section for the funding of kindergartens, elementary schools, secondary schools and community colleges * * * the same total revenue for general operations that was available [to each of them] * * * for the 1993-95 biennium * * * adjusted [for] inflation or deflation * * * [and] increases or decreases in enrollment during or after * * * 1993-95."[2]

The key problem with the certified ballot title may be demonstrated by a consideration of its Question. The action portion of the *draft* question, the one circulated for comment, was phrased in terms of a guarantee: "Shall constitution

---

"not consider arguments" that neither were presented in written comments to the Secretary of State, nor excused from presentation, pursuant to the provisions of ORS 250.085(6).

In this particular case, the Attorney General changed the draft ballot title after the expiration of the comment period, and the court has considered petitioner's arguments, pursuant to ORS 250.085(6), which provides:

> "When reviewing a title prepared by the Attorney General, the court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State *unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067.*" (Emphasis added.)

[1] ORS 250.039 also applies to a ballot title and may apply to a challenge of the title, when it is raised.

[2] The quote telescopes material from several subsections of the measure.

require state to fund schools?" No comment questioned that concept. The comments only suggested differing ways to describe the amount that is guaranteed or required by the measure. The action portion of the certified Question nonetheless asks: "Shall constitution set minimum state funding of schools?" In my view, that certified Question — announced after the comment period and changed in ways not suggested by any party — does not comply with statutory requirements.

Petitioner argues to this court that the "chief purpose of the measure * * * is to increase school funding [beyond amounts] specified by the voters who approved 'Ballot Measure 5' in the November 1990 election." Petitioner specifically argues that

> "the school funding limits approved in 1990 are being nullified by a mandatory, perpetual resort to the [state] general fund with unlimited increases for inflation and enrollment."

Petitioner also observes that this will "likely require a significant diversion * * * of the state general fund, an effect not mentioned anywhere in the certified title." Although we need not consider the correctness of the interpretation that underlies these two arguments, they do point to the failure of the certified Question to state the chief purpose of the measure and the failure of the Caption to state the subject of the measure.

The text of the measure provides:

> "The Legislative Assembly shall appropriate or otherwise provide each biennium at least the amount specified by this section * * *."

The measure refers to the "shall appropriate" amount as a "base funding amount established under subsection 2." That amount is also referred to as the "amount that must be appropriated or otherwise provided." Subsection 2 repeats that the amount described is the one "to be appropriated or * * * provided" by the state legislature. Those mandatory words, if placed in the constitution — a document that does not contain similar mandates for any other program — are in fact a guarantee of priority funding.

The language of the measure specifically places the obligation to carry out that guarantee on the legislature. The amount of the guarantee also is spelled out in the measure in

ways that show shifts in funding, in relation to present law, from local property taxes and timber-related revenues to state general fund resources. The measure defines amounts that the legislature must appropriate in terms of amounts received by local schools and community colleges from a higher level of *ad valorem* tax payments in 1993-95 than will be received thereafter under Measure 5. Unlike Measure 5, whose replacement requirement expires in 1996, this measure contains no termination date for its provisions. The legislature also is required to replace revenues that presently go to local schools from private, state, and federal timber harvests, should those revenues decline by reason of less timber being harvested in future.

Subsection 5 of the measure requires "at least" the base amount, as do the "shall appropriate" sentences quoted above. This requirement for replacement of revenues by legislative appropriation is in addition to the existing requirements that common school funds be dedicated to elementary and secondary schools (Art VIII, § 3) and that certain property tax revenues lost as a result of the adoption of Measure 5 be replaced until the end of 1996 (Art XI, § 11(b)).

Neither the certified Caption nor Question discloses that the measure requires the legislature to pick up funding that presently comes from sources that are not within present legislative funding obligations. If school revenues from those sources decline, the measure requires that the legislature replace the lost local tax revenues with state tax revenues.

The passage of this ballot measure could undermine the legislative process, because it would mandate that schools must be funded at the prescribed level, at the expense of every other governmental responsibility. That could mean that sometime in the future, the entire state general fund budget could be spent on schools and that nothing would remain to fund any other program, regardless of merit or urgency.

Instead, the certified Caption implies only that the legislature would "maintain" or continue the funding that the state now provides. But the measure requires the legislature to provide funds lost from timber tax revenues, if they decline in the future, and from the decline of local property taxes that is assured in the future by the reduction in the

maximum rate of levy that Measure 5 requires. The certified Caption does not disclose those funding shifts.

A Caption that substantially complies with the statute by unambiguously stating the subject of the measure is:

AMENDS CONSTITUTION:
REQUIRES THAT LEGISLATURE FUND SCHOOLS
BEFORE OTHER PROGRAMS.

The certified Question asks:

"Shall constitution set minimum state funding of schools, community colleges based on funds available from listed sources in 1993-95 biennium?"

That certified Question treats the chief purpose as to "set" or establish a minimum amount. Treating the computation of an amount as the chief purpose is like saying that the chief purpose of federal income tax law is to set a method of computing an amount owed rather than to impose and collect the tax. Further, the certified Question's reference to setting funding "based on funds available" is ambiguous. A voter cannot tell whether the funds are those presently available to the state or, instead, those presently available to schools. No other portion of the title clarifies the ambiguity. The Question also is ambiguous whether the guarantee is only for the 1993-95 biennium (one way to read the word "in") or whether the amount guaranteed extends into future budget periods.

I would hold that the certified Question fails to comply substantially with the requirement of ORS 250.035, because it does not state the "chief purpose" of the measure. From the language of the measure quoted above, it appears that the chief purpose of the measure is, instead, to guarantee, as a priority ahead of other state programs, at least a specified level of funds to each class of local schools, including community colleges.

A question that reflects the chief purpose of the measure, *viz.*, guaranteeing funding by requiring the legislature to appropriate at least the described amount for local schools and community colleges, is as follows:

QUESTION: Shall constitution require future legislatures to fund schools, community colleges, as a priority before other programs, at 1993-95 levels?

That is the Caption and Question that the court should certify. Because the majority certifies the ambiguous and potentially misleading Caption and Question, I dissent.

Van Hoomissen, J., joins in this dissenting opinion.